**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ROBERT F. KENNEDY HUMAN RIGHTS, *et al.*,**

**Plaintiffs,**

**v.**

**DEPARTMENT OF STATE, *et al.*,**

**Defendants.**

**Civil Action No. 25-1774 (JEB)**

# MEMORANDUM OPINION

Plaintiffs, organizations that provide legal and other services to noncitizens, challenged an alleged "Agreement," primarily consisting of diplomatic notes between the United States and El Salvador, that enabled the transfer of noncitizens from U.S. custody into Salvadoran prisons, where they were denied meaningful access to counsel and subjected to abusive conditions. Asserting that the Agreement impaired their organizational missions and harmed their clients, Plaintiffs sought to have it vacated and its implementation enjoined. The Court found, however, that Plaintiffs' requested relief was not likely to redress their injuries and, because they therefore lacked Article III standing, dismissed their suit for lack of subject-matter jurisdiction. See Robert F. Kennedy Hum. Rts. v. Dep't of State (RFK), 2026 WL 820811, at *1, 4 (D.D.C. Mar. 25, 2026). Plaintiffs now move for reconsideration under Federal Rule of Civil Procedure 59(e). As they have not established that such determination was erroneous, the Court will deny the Motion.

## I. Legal Standard

Rule 59(e) permits the filing of a motion to alter or amend a judgment within 28 days after the judgment's entry. Such a motion is not "a vehicle to present a new legal theory that was available prior to judgment," Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012), or "to relitigate old matters." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (citation omitted). Rather, a "Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quotation marks omitted). That "very exacting standard" is "justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 77–78 (D.D.C. 2013), aff'd, 782 F.3d 9 (D.C. Cir. 2015); see also Leidos, Inc. v. Hellenic Republic, 881 F.3d 213, 217 (D.C. Cir. 2018).

## II. Analysis

The Court previously found that Plaintiffs had failed to establish redressability because vacating a "nonbinding exchange of notes would not change the Government's willingness or ability" to continue exercising its power "to inflict the same injury on Plaintiffs." RFK, 2026 WL 820811, at *16. That was so, the Court explained, because Defendants maintained independent statutory authority to remove noncitizens to third countries and to provide foreign-assistance payments in exchange for the countries' accepting them. Id. at *15; see also id. at *18 ("The Agreement . . . was neither necessary nor sufficient to authorize the renditions and funding.").

Plaintiffs' Motion takes aim at those conclusions. See ECF No. 50 (Mot. for Recon.) at 1. Lacking any "intervening change of controlling law" or "new evidence" to point to, Firestone, 76 F.3d at 1208, they still assert the need to correct alleged errors in the Court's redressability analysis. Much of what they offer recapitulates arguments that were — or could have been — already presented to the Court and so does not provide a basis for granting reconsideration. Leidos, 881 F.3d at 217; see, e.g., ECF No. 40 (Pls. MTD Opp.) at 2–7, 17–18, 21–23. The Court nevertheless briefly explains why none of their contentions demonstrates any legal error in its Opinion.

A. Scope of Alleged Agreement

Plaintiffs first maintain that the Court's redressability analysis rested upon an overly narrow understanding of the alleged Agreement. See Mot. at 3–4. They note that, "in assessing standing at the motion to dismiss stage, a court must 'accept facts alleged in the complaint as true and draw all reasonable inferences from those facts in the plaintiffs' favor.'" Id. at 3 (quoting Humane Soc'y of the United States v. Vilsack, 797 F.3d 4, 8 (D.C. Cir. 2015)). True enough. At the same time, though, Plaintiffs bear the burden of establishing their standing and must "plausibl[y]" allege each of the required elements, including redressability. Humane Soc'y, 797 F.3d at 8. And in assessing whether they have met that burden, the Court "may consider materials outside the pleadings," Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005), including in an assessment of the nature of any alleged policy. Venetian Casino Resort, LLC v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005).

The Court's analysis of the Agreement did just that. It characterized the Agreement's "nonbinding character" by looking directly to the terms of the diplomatic notes that the Complaint referenced. RFK, 2026 WL 820811, at *14. Because those terms made clear that the

Agreement "carrie[d] no legal force of its own," the Court explained that vacating it "would not alter the legal landscape in a way that meaningfully bears on the injury-producing conduct." Id. That assessment was consistent with how Plaintiffs alleged the Agreement to operate in their Complaint — and with how they continue to describe it in their Motion. Id. at *15 (noting that "Plaintiffs' own characterization of the Agreement's role confirms the redressability problem"); see also Mot. at 3 (highlighting allegations in Complaint that Agreement "enabl[ed]" and "facilitate[d]" challenged conduct).

The Court's reference to "uncertainty surrounding the Agreement's scope" did not constitute a failure to properly credit Plaintiffs' factual allegations. RFK, 2026 WL 820811, at *14; but see Mot. at 3–4; ECF No. 52 (Pls. Reply) at 2–3. The point was simply that, to the extent that the Agreement allegedly extended beyond the diplomatic notes, the absence of a formal record of such a broader accord reinforced that it was not a "legally operative instrument" that imposed "binding legal commitment[s]." RFK, 2026 WL 820811, at *14.

In any event, what Plaintiffs frame as factual allegations about the Agreement's scope — including, critically, that "the Agreement was the necessary means by which the government was able to render people into U.S.-funded confinement in Salvadoran prisons" — are actually legal conclusions. See Mot. at 3. Whether the Agreement was "necessary" in the sense that mattered to the Court's redressability analysis turned on whether Defendants possessed statutory authority to undertake the actions that gave rise to Plaintiffs' injuries — *e.g.*, authority to negotiate with foreign countries to accept removed noncitizens — that was independent of the alleged Agreement. See, e.g., RFK, 2026 WL 820811, at *15 ("The authorities that produced Plaintiffs' injuries arise from statute."); id. at *17 ("[T]he conduct that led to Plaintiffs' injuries was carried out through implementing actions pursuant to independent statutory authority."). The nature and

extent of Defendants' statutory authority presented a "pure legal issue," Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d 150, 153 (D.D.C. 2018), that the Court properly determined without being limited to the allegations in Plaintiffs' Complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

B. Assuming Merits of Claims

In a related vein, Plaintiffs next invoke the principle that, "when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." Parker v. District of Columbia, 478 F.3d 370, 377 (D.C. Cir. 2007); see Mot. at 8. Yet that principle has limited purchase here. Plaintiffs suggest that redressability cannot be defeated by the presence of underlying legal authorities to continue the challenged actions because their Complaint also questions the lawfulness of Defendants' reliance on those authorities. See Mot. at 5–6, 8. Plaintiffs have chosen, however, to challenge the alleged Agreement only, see RFK, 2026 WL 820811, at *14; they do not seek any relief that would prohibit Defendants from independently relying on the statutory authorities. See ECF No. 35-1 (Compl.) at 52–53 (prayer for relief) (asking the Court to "[d]eclare unlawful and set aside the Agreement" and to "[e]njoin Defendants . . . from taking any further action pursuant to the Agreement" and from "giv[ing] effect to . . . the Agreement under a different name"). Even assuming that Plaintiffs would achieve "victory in this suit," then, such success would have no effect on Defendants' continued ability to engage in the conduct that injures Plaintiffs. Hecate Energy LLC v. FERC, 126 F.4th 660, 669 (D.C. Cir. 2025) (emphasis added). That means redressability is lacking.

Recent precedent reinforces the point. In Coalition for Humane Immigrant Rights v. Mullin (CHIR), 2026 WL 2317908 (D.C. Cir. Aug. 11, 2026), the D.C. Circuit just last month found a "fatal redressability problem" where the plaintiffs had sought a stay of guidance directing immigration officials to subject parolees to expedited removal but had not sought any relief against the underlying regulation that authorized applying expedited-removal procedures to that class of noncitizens. Id. at *2, 5. The plaintiffs had given "no basis for thinking that their susceptibility to expedited removal would be reduced in any cognizable way by the stay [of the guidance] given the continuing availability of the unstayed [regulation]." Id. at *5. It did not help, moreover, that the plaintiffs had also contended that the regulation was itself "unlawful": because they had not sought a stay of the regulation, "the requested relief would change nothing." Id. at *6. The same result follows here.

Plaintiffs' attempts to distinguish CHIR, see ECF No. 53 (Notice) at 2, are unpersuasive because they rest on the assumption that relief in this case could affect Defendants' ability to remove noncitizens into Salvadoran custody. As already explained, that is incorrect because Plaintiffs, like those in CHIR, have chosen to request relief that leaves undisturbed the underlying authority for the challenged actions. Even if the Court agreed with Plaintiffs that Defendants were exceeding their statutory authority, but see RFK, 2026 WL 820811, at *15, the most it could do would be to say as much in an opinion that called the legality of Defendants' actions into question — and language in an opinion, no matter how "persuasive," does not amount to redress for standing purposes. CHIR, 2026 WL 2317908, at *6 (quoting Haaland v. Brackeen, 599 U.S. 255, 294 (2023)).

C. Practical Effects of Vacatur

Plaintiffs next contend that the Court erred in discounting the practical effects of vacating the Agreement. See Mot. at 6–7. According to them, such vacatur likely would require Defendants to "take some additional, extra steps[,] such as negotiating new and presumably different terms" with El Salvador, before resuming the challenged conduct. Id. at 6. Even if vacatur required Defendants to engage in new negotiations, however, Plaintiffs identify no reason that they could not or would not do so. As the Court previously explained, "Vacatur of the Agreement . . . would leave the two governments exactly where they are: in possession of shared interests, the legal means to act on them, and a process of rendition and payment that they have already put in practice." RFK, 2026 WL 820811, at *15. In this context, Plaintiffs' assertion that at least "some portion" of their injuries likely would be redressed by renegotiated terms, see Mot. at 7, remains too speculative to establish standing. True, "the potential for repetition" does not always defeat redressability, particularly in cases like the ones Plaintiffs cite involving procedural injuries where providing proper process suffices for redress even if the outcome ultimately remains the same. Id. Here, however, the Court's redressability analysis did not rest upon the mere "potential" for repetition; it rested upon the fact that Plaintiffs provided no reason to doubt that Defendants would be "likely to continue" the injurious actions that they have resolved to undertake pursuant to their preexisting and continuing statutory authority. Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs., 489 F.3d 1267, 1278 (D.C. Cir. 2007) (recognizing that "the undoing of the [challenged] governmental action will not undo the harm" caused by it when "the new status quo is held in place by other forces").

D. Other Forms of Relief

Plaintiffs next fault the Court for focusing on vacatur when they also sought other forms of prospective relief, including declaratory and injunctive relief in connection with their *ultra vires* claim. See Mot. at 9. The Court's focus on vacatur followed directly from Plaintiffs' presentation of their arguments. See RFK, 2026 WL 820811, at *14 ("[T]he gravamen of the relief requested is vacatur of the Agreement.") (quoting Pls. MTD Opp. at 13). In any event, Plaintiffs do not explain why the Court's redressability analysis would apply any differently to other forms of prospective relief. Even if it had "declare[d] the Agreement unlawful and enjoin[ed] Defendants . . . from taking any steps to implement, give effect to, or reinstate the Agreement under a different name," Mot. at 9; see Compl. at 53, redressability would still turn on whether the Agreement (or its equivalent) was necessary for Defendants to undertake the actions that injured Plaintiffs. That is the very same argument that the Court rejected when assessing whether vacating the Agreement itself would likely redress Plaintiffs' injuries. See RFK, 2026 WL 820811, at *14–15.

E. Final Agency Action

Finally, Plaintiffs separately contend that the Court erred in finding that the Agreement did not constitute "final agency action" that was reviewable under the Administrative Procedure Act. Id. at *16 (quoting 5 U.S.C. § 704); see Mot. at 10–13. Yet that holding was not essential to the outcome given the Court's determination regarding standing. See RFK, 2026 WL 820811, at *16 ("Because the Court dismisses for lack of standing, it need not resolve . . . [whether] Plaintiffs' APA claims fail for want of final agency action.") (quotation marks omitted). It thus declines to return to that issue here.

## III. Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Reconsideration. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: September 2, 2026